**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRITTNEE C. COOK,<br><br>Plaintiff,<br><br>vs.<br><br>TRACTOR SUPPLY COMPANY,<br><br>Defendant. | ) | CASE NO. 5:26-cv-1417<br><br>CHIEF JUDGE SARA LIOI<br><br>MEMORANDUM OPINION AND ORDER |

Before the Court is the motion of defendant Tractor Supply Company ("TSC") to compel arbitration. (Doc. No. 4 (Motion to Compel).) Plaintiff Brittnee C. Cook ("Cook") filed an opposition to the motion (Doc. No. 6 (Opposition)), and TSC replied. (Doc. No. 8 (Reply).)[1] For the reasons that follow, the motion to compel is GRANTED, and the case is STAYED.

## I. BACKGROUND

On January 28, 2025, TSC hired Cook to work as a warehouse employee at its Navarre, Ohio distribution center. (Doc. No. 1 (Complaint) ¶ 16.) On January 30, 20256, Cook advised TSC that she was pregnant and requested a restriction on heavy lifting as a reasonable accommodation. (*Id.* ¶ 18.) While Cook claims that "[TSC] initially advised [her] that an accommodation could be made[,]" she was eventually informed "that no light-duty positions were available[.]" (*Id.* ¶¶ 19–

[1] Cook also filed a motion for leave to file a sur-reply *instanter*, suggesting that such a filing was necessary to address new arguments raised in the reply and to "correct" several statements in the reply. (Doc. No. 9 (Motion for leave), at 1 (All page number references are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.); Doc. No. 9-1 (Proposed Sur-reply).) TSC opposed the filing of a sur-reply. (Doc. No. 10 (Response).) To the extent the reply asserts new arguments, the motion for leave to file is GRANTED, and the Court has considered the sur-reply attached to Cook's motion.

20.) On February 3, 2025, TSC "placed [Cook] on leave." (*Id.* ¶ 21.) Cook alleges that, even though she obtained all requested medical documentation (*id.* ¶¶ 22–27), she was ultimately advised by TSC's third-party health administrator, Alight Solutions ("Alight"), that she was not eligible for FMLA leave. (*Id.* ¶ 28; *see id.* ¶ 20.)

In late February 2025, Cook experienced complications from her pregnancy and ultimately underwent a surgical procedure in connection with her pregnancy loss. (*Id.* ¶ 30.) On March 5, 2025, Cook informed TSC that she wished to return to work once she was medically cleared by her physician. (*Id.* ¶ 32.) TSC would not re-engage Cook in the interactive process, but merely referred her back to Alight, who demanded additional medical documentation. (*Id.* ¶ 33.) On March 24, 2025, Alight issued a decision refusing to authorize Cook's medical leave. (*Id.* ¶ 36.) TSC subsequently separated Cook, effective July 28, 2025, for want of sufficient documentation to certify her leave since February 3, 2025. (*Id.* ¶ 42.) Although TSC maintains Cook voluntarily resigned in July 2025, because she did not want to complete the leave of absence paperwork (*see* Doc. No. 4, at 3), Cook avers that she was involuntarily terminated. (Doc. No. 1 ¶¶ 37–43.)

On June 22, 2026, Cook filed a lawsuit against TSC in federal court raising claims for violations of the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. § 2000gg *et seq.*; pregnancy and sex discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*; retaliation under Title VII, 42 U.S.C. § 2000e-3; disability discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and sex and pregnancy discrimination, disability discrimination, and retaliation under Ohio Rev. Code § 4112. (*See generally* Doc. No. 1.) She seeks reinstatement, compensatory and punitive damages, attorney's fees, costs, and interest. (*Id.* at 14.)

On August 24, 2026, TSC filed the present motion to compel arbitration. TSC contends that the Court should compel the parties to arbitration "and to dismiss this civil action, or alternatively, to stay the proceedings pending arbitration[]" because all of Cook's claims "fall within the scope of a valid and enforceable agreement to arbitrate governed by" the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* (Doc. No. 4, at 1.)

The Alternative Dispute Resolution Agreements ("ADRA"), which TSC maintains Cook electronically "completed and agreed to" during her onboarding on January 28, 2025, contains a Mutual Arbitration Agreement ("MAA") which provides that the employee and TSC "***waive all rights to trial in court before a judge or jury*** on all claims covered by this [MAA]." (Doc. No. 4-1 (Declaration of Jeremy Angel) ¶¶ 9, 11–12; *id.* at 9 (Ex. 3 (ADRA (MAA ¶ 1 (emphasis in original)))).) The MAA further provides that it applies, barring exceptions not relevant to the present action, to "all legal disputes or claims pertaining to [the employee's] employment or other relationship with" TSC, including "discrimination, harassment, or retaliation; civil penalties arising from any legal violations that [the employee] personally suffered . . . or violation of any federal, state, or local law." (*Id.* at 9 (Ex. 3 (MAA ¶ 2)).)

With few non-relevant exceptions, the MAA delegates to the arbitrator the authority to resolve any dispute relating to enforceability, applicability, or interpretation of its provisions. (*Id.* at 10 (Ex. 3 (MAA ¶ 4 ("the arbitrator . . . shall have exclusive authority to resolve any dispute relating to the enforceability, applicability, or interpretation of this MAA, including without limitation any claim that it is void or voidable, and (b) the parties waive the right to have a court determine the enforceability of this MAA but may seek a court order delegating such questions to the arbitrator."))).)

The ADRA also contain the following paragraph regarding acceptance:

> ***If [the employee] accepts or continues employment or other association with [TSC] after receiving notice of these ADR Agreements, such employment or other association shall constitute acceptance of these ADR Agreements, regardless of any request for a confirming signature or electronic acknowledgement and regardless of whether [the employee] or a [TSC] representative sign or electronically acknowledges these Agreements.***

(*Id.* at 12–13 (Ex. 3 (ADRA (General Provisions ¶ 6 (emphasis in original)))).) An employee has 30 days from the date of acceptance to opt out of the ADRA. (*Id.* at 12 (Ex. 3 (General Provisions ¶ 5)).)

## II. GENERAL LAW ON ARBITRATION AGREEMENTS

The FAA manifests "a liberal federal policy favoring arbitration agreements[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *see Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (recognizing that § 2 of the FAA "'embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts'" (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006))). "To enforce this dictate, [the FAA] provides for a stay of proceedings when an issue is referable to arbitration[.]" *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3–4). "[A]ny doubts regarding arbitrability should be resolved in favor of arbitration." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citation omitted). "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478, 144 S. Ct. 1173, 218 L. Ed. 2d 494 (2024). Unless there is a separate reason for dismissal (*e.g.*, lack of jurisdiction),

courts may not dismiss a suit on the "basis that all the claims are subject to arbitration." *Id.* at 475–76, 476 n.2.

The Sixth Circuit applies a four-pronged test to determine whether an unwilling party can be compelled to arbitrate: (1) the court "must determine whether the parties agreed to arbitrate;" (2) the court "must determine the scope of that agreement;" (3) "if federal statutory claims are asserted," the court "must consider whether Congress intended those claims to be nonarbitrable;" and (4) "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted); *see Javitch*, 315 F.3d at 624 ("the court must engage in a limited review to determine whether the dispute is arbitrable" (citation omitted)).

## III. MOTION TO COMPEL ARBITRATION

Of the four *Stout* prongs, the parties focus on the first: whether the parties agreed to arbitrate. (Doc. No. 6, at 1, 7–10; Doc. No. 8, at 3–5; *see* Doc. No. 6, at 7 ("[] Cook does not argue that [TSC's] terms are unenforceable or that they do not cover her claims.") Under the FAA, "the duty to arbitrate arises only from the party's consent. So parties cannot be forced into an arbitral forum unless they actually agreed to arbitrate. And courts must confirm that they did so before shipping the dispute to arbitration[.]" *Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 843 (6th Cir. 2021) (citations, including internal citations, omitted); *see Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S. Ct. 1342, 4 L. Ed. 2d 1409 (1960) (a party cannot be forced to arbitrate any dispute if the party has not agreed to do so). Even where (as here) the arbitration agreement contains a delegation clause reserving various "gateway questions of

arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy[,]" *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 69, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) (quotation marks and citations omitted), "[a] challenge to arbitration agreement formation is always in the jurisdiction of the courts." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010)).

**A. Agreement to Arbitrate**

The first *Stout* prong directs this Court to determine whether "a valid agreement to arbitrate exists between the parties[.]" *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 415–16 (6th Cir. 2011) (quoting *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009)). "A written agreement to arbitrate disputes arising out of a transaction in interstate commerce shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at 416 (quoting *Javitch*, 315 F.3d at 624) (quotation marks and further citations omitted). Because arbitration is a matter of contract, courts "review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright*, 507 F.3d at 972 (citation omitted).

The party seeking to compel arbitration "bears the initial burden to produce evidence sufficient to allow a trier of fact to conclude that the parties entered a contract to arbitrate." *Memmer v. U.S. Wholesale Mortg., LLC*, 135 F.4th 398, 404 (6th Cir. 2025) (citation omitted). The burden then shifts to the party opposing arbitration to place the validity of the agreement at issue." *Id.* (citation omitted). To meet their burden, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos.,*

*Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (citation omitted). "The required showing mirrors that required to withstand summary judgment in a civil suit." *Id.* (citation omitted). The party resisting arbitration must, therefore, provide "specific facts, as opposed to general allegations, that would allow a rational trier of fact to find that [s]he did not acknowledge the agreement or learn about the arbitration condition of employment in other ways." *Boykin*, 3 F.4th at 839 (quotation marks and citation omitted). Ultimately, a court viewing the facts "in the light most favorable to the [non-moving party]," must determine "whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Great Earth Cos.*, 288 F.3d at 889 (citation omitted).

TSC offers the declaration of Jeremy Angel ("Angel"), Senior Manager, HR Technology Platforms for TSC. (Doc. No. 4-1, at 1 ¶ 1.) Angel describes the "electronic systems that [TSC] uses to collect and store employee ('team members') data, including the SuccessFactors system, which is used . . . for the onboarding and training of team members." (*Id.*) The SuccessFactors system serves as a "repository for electronic employee onboarding and training modules and the presentation of documents necessary for team members to review and sign in connection with their employment, such as the company's 'Team Member Handbook' and its [ADRA]." (*Id.* ¶ 3.) Angel described the operation of the SuccessFactors online portal as follows:

> Whenever a team member takes an action within the SuccessFactors system, such as reviewing and acknowledging a document or policy, SuccessFactors records the team member's action and the date and time of the action. [TSC] has access to the records generated by this system and . . . stores the records archived by the SuccessFactors system in the ordinary course of its business. (*Id.* at 1–2 ¶ 4.)
>
> Team members access the SuccessFactors system from in-store terminals using unique credentials that the team members create during the onboarding process. As part of the onboarding process for their employment with [TSC], team members, such as []Cook, receive a unique username and password to access the

> SuccessFactors system. After accessing the SuccessFactors system with those credentials, team members are prompted to change their password to a password of their choice. Team members are logged out of the terminals after a period of inactivity. (*Id.* at 2 ¶ 5.)
>
> After logging in, the SuccessFactors system directs team members to a unique webpage, which has a scroll that includes links to the training modules and document reviews that need to be completed. The company's [ADRA] is one such document that is presented this way to team members. The SuccessFactors system tracks whether team members have completed their review and acknowledgment of required documents. Only documents that have not been completed appear within the scroll. (*Id.* ¶ 6.)

With respect to Cook's use of the SuccessFactors system, Angel declares that he searched the database for all records archived pertaining to Cook during her employment with TSC, using Cook's unique username. (*Id.* ¶ 7.) This search revealed Cook used the SuccessFactors system "to complete required training videos, learning programs, and sign and acknowledge company documents." (*Id.* ¶ 8.) Specifically, Angel discovered:

> The records in the SuccessFactors system reflect that as part of her initial onboarding, on January 28, 2025, []Cook used the SuccessFactors system to access and review the ADRA. A true and correct copy of a printout of an excerpt from the SuccessFactors systems showing that access is attached to this declaration as **Exhibit 1**. (*Id.* ¶ 9 (bolding in original).)
>
> Attached to this declaration as **Exhibit 2** is a true and accurate copy of a screenshot from the SuccessFactors system showing how the ADRA appears in the SuccessFactors system. As shown in Exhibit 2, in order to "complete" the ADRA review module, a team member must click on the "Agree" button. More specifically, team members are advised: "*Please acknowledge that you have carefully read and agree to the material contained in this document by clicking the 'Agree' button below. Please note that this will constitute your e-signature, which is the electronic equivalent of a hand-written signature*." (*Id.* ¶ 10 (bolding in original, emphasis added).)
>
> The records in the SuccessFactors system also reflect that on January 28, 2025, []Cook completed her review of the [ADRA] and clicked on the "Agree" button, indicating her acknowledgment that she had carefully read and agreed to the ADRA. This is reflected in the "Completion Status" and "Completion Date" columns appearing on the excerpt from the SuccessFactors system attached to this

declaration as Exhibit 1. (*Id.* ¶ 11.)

***

> The SuccessFactors system also generates "Certificates of Completion" for team members who complete modules within the system if they select the option to print a certificate upon completion of a module. Attached hereto as **Exhibit 4** is a true and correct copy of a printout of a Certificate of Completion of [ADRA] for []Cook, dated January 28, 2025, which I obtained through a search of the company system. (*Id.* at 3 ¶ 13.)

The Court finds that TSC has met its burden of setting forth facts sufficient to allow a fact-finder to conclude that the parties agreed to arbitrate. *See Memmer*, 135 F.4th at 404–05. While Cook complains that TSC has failed to produce her signature, electronic or otherwise, on any of the documents (*see* Doc. No. 6, at 2), "Ohio federal courts applying Ohio law have consistently found that electronic acknowledgements of arbitration clauses are sufficient to bind employees." *Reed v. Best Buy Warehousing Logistics, LLCs*, 625 F. Supp. 3d 662, 666 (N.D. Ohio 2022) (citing, among authority, *Reulbach v. Life Time Fitness, Inc.*, No. 1:21-cv-1013, 2021 WL 2581565, at *5 (N.D. Ohio June 23, 2021) (employee was bound by arbitration clause where he electronically viewed the agreement and clicked "I Agree")); *Page v. Gamestop Corp.*, 5:23-cv-1970, 2024 WL 1638989, at *5 (N.D. Ohio Apr. 16, 2024) ("Ohio courts have held that clicking a 'clickwrap agreement' is an acceptable method to manifest assent to the terms of the agreement." (quotation marks omitted) (collecting cases)); *see also* Ohio Rev. Code § 1306.06(A)–(B) ("(A) A record or signature may not be denied legal effect or enforceability solely because it is in electronic form. (B) A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.")

Although Cook also takes issue with the fact that TSC has not produced a screenshot of the moment she clicked the "Agree" button (*see* Doc. No. 6, at 2), TSC presents unrebutted evidence

that an employee cannot "complete" the ADRA without clicking on the "Agree" button (Doc. No. 4-1, at 2 ¶ 10), and that Cook completed (and therefore assented to) the ADRA on January 28, 2025, at 10:41 a.m. (*Id.* ¶ 11 (noting that "[t]his is reflected in the "Completion Status" and "Completion Date" columns" in Ex. 3; Doc. No. 4-1, at 5 (Ex. 3)). Courts have found such evidence sufficient to establish that an employee electronically acknowledged and accepted an arbitration agreement. *See, e.g.*, *Hill v. Checkr, Inc.*, No. 4:24-cv-1628, 2025 WL 2391441, at *6 (N.D. Ohio Aug. 15, 2025) ("In order to proceed to access the Candidate Portal, a party had to click the box affirming acceptance to the . . . arbitration agreement. Hill's acceptance is found here based on the unrebutted [company] declaration," supported by the electronic evidence that Hill provided his personal identifiers and clicked the agree [button]"); *Reed*, 625 F. Supp. 3d at 664 (evidence that plaintiff "[clicked] 'I Agree' to the prompt 'I Agree to Best Buy's Arbitration Policy[,]" to continue with application process was sufficient (citation omitted)); *Coleman v. DMI GC Holdings, LLC*, No. 25-cv-10556, 2026 WL 103470, at *3–5 (E.D. Mich. Jan. 14, 2026) (finding electronic "audit trails that included the exact date and time [p]laintiffs reviewed and acknowledged" arbitration agreement using SuccessFactors sufficient under Michigan law to establish agreement to arbitrate (citations omitted)); *Cabrera v. Charter Commc'ns, LLC*, 195 N.E.3d 533, 536, 538–39 (Ohio Ct. App. 2022) (evidence that an employee had to acknowledge arbitration agreement before completing onboarding, along with evidence that plaintiff completed onboarding process, was sufficient to show assent); *see* Ohio Rev. Code § 1306.08(A) (noting that "[a]n electronic record or electronic signature" can be shown to be attributable to a person by "any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature is attributable").

Because TSC met its initial burden, the burden shifts to Cook to show specific facts that would permit a rational trier of fact to find that she did not acknowledge the arbitration provisions in the ADRA. *Boykin*, 3 F.4th at 839–40. Cook attempts to meet her burden by offering her own affidavit regarding the events associated with her onboarding. (Doc. No. 6-1 (Declaration of Brittnee C. Cook).) She avers that she recalls participating in a "new hire orientation" on January 28, 2025, and that her "husband, Tommy Cook, was hired at the same time and attended the same orientation session." (*Id.* ¶ 3.) She also remembers "complet[ing] portions of the training individually" using TSC's electronic terminals. (*See id.* ¶ 4.) Throughout the session, she recalls there were technical problems with some of the terminals (*id.* ¶ 5), and that when such a problem occurred, the trainer would either take control of the person's device or direct them to another device (*id.* ¶ 6). She also remembers offering [her] own device to another trainee who was having technical problems" (*id.* ¶ 7), and that "[t]rainees were permitted to remain in the training room with the computer terminals during breaks while she and her husband, along with others, would leave the room (*id.* ¶¶ 9–10).

Cook admits, however, that "[a] substantial amount of the orientation day is not clear in [her] memory." (*Id.* ¶ 11.) She avers that she "want[s] to be clear with the Court" (*id.*) that she "do[es] not recall" any of the following:

- logging into any device on January 28, 2025, [or] creating or being given a username and password that day (*id.* ¶ 12)[;]

- reading, or being asked to read, any multi-page document on a screen during the orientation (*id.* ¶ 13)[;]

- seeing any document on a screen with buttons marked "Agree" and "Disagree," [or] clicking a button marked "Agree" on any document (*id.* ¶ 14)[;]

- anyone telling [her], at the orientation or at any other time during [her] employment, that agreeing to arbitration was a condition of [her] employment (*id.* ¶ 15)[;]

- being given a copy, on paper or electronically, of any document titled "Alternative Dispute Resolution Agreements," [or] being told that [she] had a right to opt out of any arbitration agreement or how [she] would go about doing so (*id.* ¶ 16)[;] or

- arbitration or alternative dispute resolution being discussed at any point during the orientation. (*Id.* ¶ 17.)

In *Boykin*, the plaintiff submitted an affidavit stating that he "unequivocally did not consent to, sign, acknowledge or authorize any type of arbitration agreement with" his employer. 3 F.4th at 840 (quoting record). The Sixth Circuit found the plaintiff's "unequivocal denial" of his assent to arbitration "create[d] a factual dispute over whether [he] authorized the arbitration contract or learned of [his employer's] arbitration policy in other ways." *Id.* (citations omitted). In so ruling, the court observed that a plaintiff who claims that they could "not recall [accepting an arbitration agreement] *by itself* may [fall] short." *Id.* (emphasis in original) (citations omitted). Recognizing that "convenient memory lapses do not create factual disputes that are genuine[,]" the court emphasized that "[a] party thus cannot expect to obtain a trial under [9 U.S.C.] § 4 simply by testifying that the party does not 'remember' signing an arbitration contract or receiving information about arbitration." *Id.* at 839–40 (collecting cases).

The Court finds that Cook's repeated "I do not recall" statements are the very type of "convenient memory lapses" that the Sixth Circuit acknowledged would be insufficient to create a factual dispute. *Compare Tucker v. United Wholesale Mortg., Inc.*, No. 24-1595, 2025 WL 1082316, at *3 (6th Cir. Apr. 10, 2025) (plaintiff's affidavit that he did not recall signing an

arbitration agreement "insufficient to create a genuine factual dispute");[2] *Coleman*, 2026 WL 103470, at *1–3 (plaintiffs' "sworn affidavits, that they 'do not recall' reviewing or signing" arbitration agreements failed to create genuine issue of material fact (quotation omitted)); *Robinson-Cooper v. Fitness Int'l, LLC*, No. 24-cv-11136, 2026 WL 1847400, at *2 (E.D. Mich. June 26, 2026) (affidavit stating that plaintiff has no recollection of signing the arbitration agreement insufficient); *Wolfe v. J.C. Penny Corp., Inc.*, 111 N.E.3d 126, 131 (Ohio Ct. App. 2018) (plaintiff's "equivocal" statement that she never "knowingly" signed the arbitration agreement, and that "to the best of her knowledge" she was never presented with such an agreement insufficient); *with Fania v. KIN Ins., Inc.*, No. 2:22-cv-12354, 2023 WL 3587753, at *3–4 (E.D. Mich. May 22, 2023) (plaintiff's affidavit "flatly and unequivocally den[ying]" ever agreeing to the arbitration agreement "sufficiently put[] 'in issue' the formation" of the arbitration agreement).

It is true Cook remembers certain limited facts from the January 28, 2025 orientation session. In particular, she remembers that often trainees experienced problems with their computer terminals, and that when this happened, a supervisor would take control of that trainee's terminal or direct them to another terminal. (Doc. No. 6-1 ¶¶ 5–6.) What Cook fails to allege, however, is that a supervisor ever took control of *her* terminal because *she* was having computer troubles. In *Barnes v. G4S Secure Sols. (USA) Inc.*, a plaintiff alleged that "several times" during his onboarding session, his supervisor "reached over [his] shoulder and took control of the mouse . . .

[2] In *Tucker*, the Sixth Circuit noted that to permit a trial on the question of arbitrability based on a plaintiff's "bald disclaimer of memory would permit a plaintiff to access a trial every time, undermining the virtues of 'speed and simplicity and inexpensiveness' Congress embraced through the Federal Arbitration Act." *Id.* (quoting *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 185, 139 S. Ct. 1407, 203 L. Ed. 2d 636 (2019)).

to assist and move [him] through the process faster[.]" No. 23-cv-12897, 2025 WL 769970, at *13 (E.D. Mich. Mar. 11, 2025) (quotation omitted). The plaintiff conceded, however, that, during these times, he could not see what his supervisor was doing and did not know "whether [his] supervisor accepted any agreements on his behalf[.]" *Id.* (citation omitted). The court found this evidence, which was stronger than that presented by Cook, still fell short of putting the question of arbitrability at issue. *Id.* at *14–16. And while Cook avers that she "offer[ed her] own device to another trainee who was having technical problems" (*id.* ¶ 7), she does not even claim that the other trainee actually used Cook's terminal, let alone present evidence that the trainee accessed her terminal using Cook's credentials, finished Cook's training modules, and accepted agreements on Cook's behalf or clicked on any button labeled "Agree".

Cook is, therefore, left to speculate that someone might have used her credentials to access her terminal during a break before her session timed out and clicked on the "Agree" button for her while she was away. Yet, "mere conclusory and unsupported allegations, rooted in speculation," will not carry her burden of demonstrating a factual dispute. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (quotation marks and citation omitted); *Ross v. Duggan*, 402 F.3d 575, 588 (6th Cir. 2004) (plaintiff may not rely on "naked speculation, conjecture, hunches, hypothesizing, intuitions, innuendo, insupportable 'inferences,' empty theorizing, creative guesswork, [or] wishful thinking" (citation omitted). The Court finds that Cook has failed to put

the question of arbitrability at issue.[3] Accordingly, the first *Stout* prong—whether the parties agreed to arbitrate—favors compelling this case to arbitration.[4]

### B. Remaining *Stout* Prongs

As noted, Cook does not seriously challenge the remaining prongs of the Sixth Circuit's test. For instance, Cook "does not argue that [TSC's] terms [in the MAA] are unenforceable or that they do not cover her claims." (Doc. No. 6, at 7.)[5] Further, it is clear that all of her claims arise out the employer-employee relationship between TSC and Cook. *Cf. Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 505 (6th Cir. 2007) ("[I]f an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement[.]"). The MAA specifically covers "all legal disputes or claims pertaining to [Cook's]

---

[3] In the event the Court finds that the record requires development before it can rule on TSC's motion, Cook requests limited discovery on the issue of formation. (Doc. No. 6, at 13 (citation omitted).) Although Cook seeks documents and information relating to the SuccessFactors system (*see id.*), she does not challenge the veracity or accuracy of Angel's affidavit. Instead, she challenges the sufficiency of TSC's evidence, which the Court has already determined satisfies TSC's initial burden and effectively shifts the burden to Cook. In *Boykin*, the Sixth Circuit held that "a party who adequately puts the formation of an arbitration contract in issue may request discovery on that contract-formation question." 3 F.4th at 841 (citations omitted). Because Cook fails to put the formation of the arbitration contract in issue, she is not entitled to discovery under Fed. R. Civ. P. 56(d). *See, e.g.*, *Barnes*, 2025 WL 769970, at *23 ("Because the Court concludes that Plaintiffs have not shown a genuine issue of material fact as to the validity of the agreements to arbitrate, discovery on this matter is unwarranted.")

[4] Because the Court finds that Cook fails to generate a genuine issue of material fact regarding the formation of the arbitration agreement, it need not reach TSC's alternative argument that "[Cook] is independently bound by the MAA by way of continued employment after notice." (Doc. No. 8, at 5–7.)

[5] Notwithstanding this concession, in her sur-reply brief, Cook suggests that she "reserves her remaining defenses[,]" and posits that the questions of scope and enforceability "do not arise unless the Court first finds that an agreement exists." (Doc. No. 9-1, at 4 (citing Doc. No. 6, at 7; Doc. No. 8, at 7–8).) Cook has no right to litigate the issue of arbitrability in stages. Confronted with a fully supported motion to compel, Cook was obligated to address all of the *Stout* factors. While the Court has performed its own analysis, Cook conceded or waived any arguments not raised in her briefing. *See Humphrey v. U.S. Att'y Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (where a party does not raise an argument in opposition to a motion, that argument is waived (citations omitted)); *Nat'l Credit Union, Admin. Bd. v. Cumis Ins. Soc'y, Inc.*, No. 1:11-cv-1739, 2015 WL 6742073, at *2 (N.D. Ohio Nov. 2, 2015) ("A party is not entitled to reserve particular issues and arguments until after a court rules against it." (quotation omitted)); *J.S.T. Corp. v. Robert Bosch LLC*, No. 15-cv-13842, 2019 WL 2354631, at *8 (E.D. Mich. June 3, 2019) (parties may not reserve arguments for later discussion); *see, e.g., Rees v. Corr. Corp. of Am.*, No. 4:15-cv-2050, 2015 WL 756859, at *2 (N.D. Ohio Nov. 24, 2015) (failure to oppose motion to dismiss constituted waiver).

employment or other relationship with" TSC, including "discrimination, harassment, or retaliation . . . [and] violation of any federal, state, or local law." (Doc. No. 4-1, at 9 (Ex. 3 (MAA ¶ 2)).) The Court concludes, therefore, that it was the intent of the parties for such claims to be included within the scope of the arbitration agreement. The second prong favors compelling arbitration.

Under the third *Stout* prong, this Court must consider whether Congress intended those claims to be non-arbitrable. 228 F.3d at 714 (citation omitted). The Court is unaware of any federal statutes prohibiting arbitration of claims arising out of the employment relationship. Rather, "[t]he law is clear that discrimination claims, including those brought under Title VII and state law, are subject to arbitration agreements." *Hutchinson v. Earl Scheib, Inc.*, No. 07-cv-10595, 2007 WL 3053646, at *1 (E.D. Mich. Oct. 18, 2007); *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 462 (6th Cir. 1999) (recognizing that a plaintiff in an employment discrimination case waives her right to pursue a private cause of action by agreeing to arbitrate); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 310 (6th Cir. 1991) (holding claims arising under Title VII are arbitrable); *Rowe v. ZF N. Am., Inc.*, No. 3:20-cv-1296, 2021 WL 3036787, at *3 (N.D. Ohio July 19, 2021) (ADA claims are arbitrable (collecting cases)).[6] Because it finds no congressional intent to exclude claims such as Cook's from arbitration, the Court concludes that the first three prongs of the test strongly favor compelling this matter to arbitration.

This leave the final *Stout* prong, which tasks the Court with determining whether the action should be stayed or dismissed pending arbitration. *See McGee v. Armstrong*, 941 F.3d 859, 865

[6] Indeed, the plain language of the ADA demonstrates that Congress intended claims arising under the statute to be arbitrable. *See* 42 U.S.C. § 12212 ("Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and *arbitration*, is encouraged to resolve disputes arising under this chapter." (emphasis added)).

(6th Cir. 2019) (quoting *Stout*, 228 F.3d at 714). As noted, § 3 of the FAA provides that once a court determines that a dispute is covered by the parties' arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. While TSC requests either dismissal or a stay (Doc. No. 4, at 1), Cook unambiguously requests that the Court stay the case in the event it compels arbitration. (Doc. No. 6, at 14.) Because Cook requests a stay, the Court is required under § 3 to stay this action pending arbitration. *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 518 (6th Cir. 2017) (explaining that the FAA instructs district courts to stay cases pending arbitration if (1) the issue is arbitrable, (2) one of the parties applies for a stay, and (3) the party requesting a stay is not in default).

## IV. CONCLUSION

For the reasons discussed herein, TSC's motion to compel arbitration (Doc. No. 4) is GRANTED, and Cook is compelled to arbitrate the claims in her complaint. The Court hereby STAYS and ADMINISTRATIVELY CLOSES this case pending the conclusion of arbitration. *See Spizzirri*, 601 U.S. at 478 ("District courts can . . . adopt practices to minimize any administrative burden caused by the stays that § 3 requires.") The parties are further ORDERED to notify the Court of the outcome of the arbitration proceedings within 14 days of their conclusion and whether any further proceedings are necessary in this case.

**IT IS SO ORDERED.**

Dated: November 2, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**